UNITED STATES of America,
Plaintiff-Appellant,

v.

CARLIN COMMUNICATIONS, INC. Carl
Ruderman, Ira Kirschenbaum, Kevin
Goodman, and Samantha Fox, Defend-
ants-Appellees.

Nos. 85–2645, 85–2652 to 85–2655.

United States Court of Appeals,
Tenth Circuit.

April 9, 1987.

Richard N.W. Lambert, Asst. U.S. Atty., and Brent D. Ward, U.S. Atty., Salt Lake City, Utah, with him on brief, for plaintiff-appellant U.S.

Harold R. Tyler, Jr., Patterson, Belknap, Webb & Tyler, New York City, for defendants-appellees. With him on brief were Michael B. Mukasey, Patterson, Belknap, Webb & Tyler, New York City, Stephen R. McCaughey and Christine F. Soltis of Hatch & McCaughey, Salt Lake City, Utah, Frank H. Wohl of Lankler, Siffert & Wohl, New York City, John H. Weston of Brown, Weston & Sarno, Beverly Hills, Cal., and Jerome Mooney of Mooney & Smith, Salt Lake City, Utah, for defendants-appellees.

Before McKAY and BALDOCK, Circuit Judges, and BROWN, Senior District Judge.*

WESLEY E. BROWN, Senior District Judge.

A twenty-three count indictment filed in Salt Lake City on April 25, 1985, charged Carlin Communications, two of its officers, and one employee, and an actress, Samantha Fox, with various federal obscenity crimes in connection with the operation of a

---

* Honorable Wesley E. Brown, United States District Senior Judge for the District of Kansas, sitting by designation.

"dial it" telephone service whereby persons could call a New York City telephone number and listen to a sexually suggestive, pre-recorded message.

Upon motion by all defendants under Rule 12(b), the Indictment was dismissed in its entirety as to all defendants for the reason that it failed to charge any offense. The government appeals.

The only issue in this appeal is whether or not provision of the "dial-it" service, which offered callers who chose to dial, the opportunity to hear the pre-recorded telephone messages of a sexually explicit nature, violated the provisions of 18 U.S.C. Secs. 1462, and 1465, and/or 47 U.S.C. Sec. 223(a).

Counts I through VIII of the Indictment in this case charged that on various dates in 1983, the defendants did knowingly transport in interstate commerce, from New York City, New York, to various points in Utah, obscene matter for the purpose of sale and distribution, to-wit: a pre-recorded audio message portraying explicit sexual conduct, all in violation of 18 U.S.C. Secs. 1465, and 2.[1]

Counts IX through XVI of the Indictment charged that on dates in 1983, the defendants knowingly used a common carrier for carriage in interstate commerce from New York City to points in Utah matters of obscene character, that is, the pre-recorded messages, in violation of 18 U.S.C. Sec. 1462.

Counts XVII through XXIII of the Indictment charged that on specific dates in 1983, the defendants did knowingly cause the making of an obscene comment, request, suggestion and proposal by means of interstate telephonic communications between New York and Utah locations—by means of the pre-recorded message.

The parties have stipulated that all of the acts charged in the Indictment were charged to have been effected by telephone through the use of a dial-it service in which callers place a telephone call to a New York number, which call is answered by an electronic device that plays a pre-recorded message.

Section 1465 of Title 18 U.S.C.A., the statute involved in Counts I–VIII of the Indictment, provides in pertinent part that:

"Whoever knowingly transports in interstate or foreign commerce for the purpose of sale or distribution any obscene paper, letter, writing, print, silhouette, drawing, figure, image, cast, phonograph recording, electrical transcription or other article capable of producing sound or any other matter of indecent or immoral character, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

\* \* \* \* \* \*

"When any person is convicted of a violation of this Act, the court in its judgment of conviction may, in addition to the penalty prescribed, order the confiscation and disposal of such items described herein which were found in the possession or under the immediate control of such person at the time of his arrest."

Section 1462 of Title 18, the subject matter of Counts IX through XVI of the Indictment, prohibits the "importation or transportation of obscene matters":

"Whoever brings into the United States, or any place subject to the jurisdiction thereof, or knowingly uses any express company or other common carrier, for carriage in interstate or foreign commerce—

(a) any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character; or

(b) any obscene, lewd, lascivious, or filthy phonograph recording, electrical transcription, or other article or thing capable of producing sound; or

(c) any drug, medicine, article, or thing designed, adapted, or intended for pro-

---

1. Samantha Fox, an actress, was named as defendant only in Counts IV, XVI, XVII, and XVIII. Each count in the Indictment also charged aiding and abetting in violation of 18 U.S.C. Sec.

2. In each instance it was charged that the message was distributed to a minor child, age 16 years or younger.

ducing abortion, or for any indecent or immoral use; or any written or printed card, letter, circular, book, pamphlet, advertisement, or notice of any kind giving information, directly or indirectly, where, how, or of whom, or by what means any of such mentioned articles, matters, or things may be obtained or made;

\* \* \* \* \* \*

Shall be fined not more than $5,000 or imprisoned not more than five years, or both, for the first such offense and shall be fined not more than $10,000 or imprisoned not more than ten years, or both, for each such offense thereafter.[2]

Section 223 of Title 47 U.S.C.A. the statute involved in Counts XVII–XXIII, pertains to "obscene or harassing" telephone calls in interstate communications. Prior to December 8, 1983, *and at the time of the offenses charged in this action*, that section, in its entirety, provided that:

"Whoever—

(1) in the District of Columbia or in interstate or foreign communication by means of telephone—

(A) makes any comment, request, suggestion or proposal which is obscene, lewd, lascivious, filthy, or indecent;

(B) makes a telephone call, whether or not conversation ensues, without disclosing his identity and with intent to annoy, abuse, threaten, or harass any person at the called number;

(C) makes or causes the telephone of another repeatedly or continuously to ring, with intent to harass any person at the called number; or

(D) makes repeated telephone calls, during which conversation ensues, solely to harass any person at the called number; or

(2) knowingly permits any telephone under his control to be used for any purpose prohibited by this section,

shall be fined not more than $500 or imprisoned not more than six months, or both.[3]

Carlin's telephone service has been the subject of previous litigation in the District of New York and before various administrative agencies, and a full review of the subject matter may be found in *Carlin Communications, Inc. v. F.C.C.*, 749 F.2d 113 (2nd Cir.1984). Briefly stated, it appears that the dial-it service received 800,000 calls per day in May, 1983, and a total of 180,000,000 calls during the year ending February, 1984. The calls are made to numbers in the Metropolitan New York area, with 80% being local calls and the remaining being long distance calls. The service began in February, 1983 and the telephone numbers are advertised in adult-type magazines. Under leased line tariffs, the calls are made at ordinary rates, and Carlin makes two cents per local or long distance call, and the telephone companies receive the remaining revenues.[4]

Peter F. Cohalan, the County Executive for Suffolk County, New York, began a drive to regulate the dial-it service by filing suit against Carlin and the FCC in New York state court. This suit was dismissed for lack of jurisdiction on removal to the federal court in March, 1983. *Cohalan v. High Soc'y Magazine, Inc.*, No. 3490/1983 (N.Y.Sup.Ct.), (on removal, No. CV 83–603, E.D.N.Y.) Cohalan and Congressman

---

**2.** Section 1463 and Section 1464 of Title 18, which prohibit the mailing of indecent matter on wrappers or envelopes, and the utterance of any "obscene, indecent, or profane language by means of radio communication," are not involved in this litigation.

**3.** The statute was amended December 8, 1983, by Pub.L. 98–214, and the above quoted provisions were designated as subsection (a) of Sec. 223. In paragraph (2), the word "facility" was inserted after the word "telephone", and the penalty provision was raised from $500 to $50,000.

This amendment also added subsection (b) to Sec. 223, discussed *infra*.

**4.** By April, 1985, dial-a-porn calls appeared to have leveled off at 6 to 7 million per month. Based on tariffs as of May, 1985, which yielded 2 cents per call to the provider of the service, providers of such services earned gross revenues of $130,000 per month, while the New York Telephone Company received 9.4 cents per call, thus grossing revenues exceeding a half million dollars per month. *Carlin Communications v. F.C.C.*, 787 F.2d 846 (2nd Cir.1986).

Thomas J. Bliley (R–Va.) then sought to have the FCC terminate Carlin's dial-it service by administrative action, but the FCC concluded that federal law did not restrict the service. Congressman Bliley then proposed an amendment to Section 223 of the Communications Act, 47 U.S.C. Sec. 223, which was ultimately passed and signed by the President on December 8, 1983,[5] Pub.L. 98–214, Sec. 8(a), (b), 97 Stat. 1469, 1470.

This amendment, which now appears as Section 223 *(b)* provides that:

"(b)(1) Whoever knowingly—

(A) in the District of Columbia or in interstate or foreign communication, by means of telephone, makes (directly or by recording device) any obscene or indecent communication for commercial purposes to any person under eighteen years of age or to any other person without that person's consent, regardless of whether the maker of such communication placed the call; or

(B) permits any telephone facility under such person's control to be used for any activity prohibited by subparagraph (A),

shall be fined not more than $50,000 or imprisoned not more than six months, or both."

"(2) *It is a defense* to a prosecution under this subsection that the defendant restricted access to the prohibited communication to persons eighteen years of age or older *in accordance with procedures which the Commission shall prescribe by regulation.*"

\*   \*   \*   \*   \*   \*

"(5) The Attorney General may bring suit in the appropriate district court of the United States to enjoin any act or practice which violates paragraph 1(A) or 1(B)...." (Emphasis supplied).

After Section 223(b) was passed, the FCC initiated proceeding in order to promulgate the regulations mentioned by Congress in paragraph (b)(2), and ultimately issued a regulation providing that it would be a defense to prosecution under Section 223(b)

if the defendant took steps to restrict access to dial-it services by operating only between the hours of 9:00 p.m. and 8:00 a.m. Eastern Time, or required payment by credit card before transmission of a message. The operating hour provision was designed to apply to Carlin's dial-it services, and the credit card provision would apply only to regulate live telephone services.

Carlin then petitioned for review of the FCC rule-making order, 49 Fed. Reg. 24,-996, 25,003 (1984) which was to be codified at 47 C.F.R. Sec. 64.201, contending that the regulation would violate the First Amendment's requirement that restrictions on protected speech be in the least restrictive form, and that the regulation was either impermissibly overbroad or vague, and arbitrary and capricious. Upon this petition, the Second Circuit, without declaring the regulation impermissible, found that the record was not sufficiently developed to sustain it. The court specifically noted that while "(t)he interest in protecting minors from salacious matter is no doubt quite compelling," the Commission had "failed adequately to demonstrate that the regulatory scheme is well tailored to its ends or that those ends could not be met by less drastic means." *Carlin Communications, Inc., v. F.C.C., supra,* 749 F.2d 113, at 121.

After further rule-making hearings in which the Commission considered the feasibility of blocking or scrambling devices, or the use of identity codes, it was concluded that the most effective means of restricting access by minors was to send messages only to those adults who first obtained an access or identification code from the service provider, or to require payment by credit card before access could be obtained. Users of the service would be required to fill out a written application, containing proof of age before obtaining an access code number.

---

**5.** All of the offenses charged in the Indictment here allegedly occurred *prior to* enactment of

Sec. 223(b).

Upon the petition of Carlin, these second regulations were set aside upon a finding that, with respect to services operating under the communciation system of the New York Telephone Company, there was no evidence that access codes were technically feasible, and that there was insufficient evidence to establish that the access code system was the least restrictive means of limiting minors' access to dial-it services. *Carlin Communications v. F.C.C.*, 787 F.2d 846 (2nd Cir.1986). In so doing, the Court particularly considered the intent of Congress in enacting Section 223(b):

"Under section 223(b)(2), compliance with these regulations establishes a defense to criminal prosecution for violating section 223 (b((1); making 'any obscene or indecent communication for commercial purposes to any person under eighteen years of age ...' This prohibition was enacted by a Congress well aware that not only were 'very complex issues' relating to 'technical feasibility' involved, 105 Cong.Rec. E5966–67 (daily ed. Dec. 14, 1983) (remarks of Rep. Kastenmeier), but that under the Constitution the adult population may not be reduced to 'hearing only what is fit for a child'.... The regulations are to 'permit adult access while limiting children's access,' having in mind that '(i)f ... no such regulations are feasible, then less restrictive measure rather than broader restrictions will have to suffice to avoid any constitutional infirmity.' 105 Cong. Rec. at E5966." (787 F.2d at 847).

After reviewing the record, which includes an extensive Appendix containing documents relating to administrative hearings before the F.C.C. as well as House and Senate Reports on the statutes in question, we are persuaded that defendants' conduct did not fall within the proscriptions of 18 U.S.C. Sec. 1462, 18 U.S.C. Sec. 1465, or 47 U.S.C. Sec. 223(a), and we therefore affirm the dismissal of the Indictment.

■ Section 1462 of Title 18, the statute involved in Counts IX through XVI of the Indictment, prohibits the transportation in interstate commerce of obscene articles by means of an express company or other common carrier. While the term "common carrier" can include telephone companies in certain settings, when used in Section 1462, it should be understood in its ordinary sense as applying to means of transportation which carry persons or tangible property for hire. The meaning of "common carrier" in Section 1462 is also clear by the context in which the term appears, that is, in connection with phrase "express company or other common carrier." It is also clear that Section 1462 prohibits the shipment of tangible articles and not the intangible communication of telephone messages. Subsection (b) relates only to the transportation of sound-producing devices, and not the transmission of sound itself.

■ Like Section 1462, Section 1465, the statute charged in Counts I through VIII, is restricted in its terms to the transportation of tangible objects. Read as a whole, it is simply inapplicable to telephone messages—it refers to copies of any *publication*—or to "any article" of proscribed nature.

In addition, the legislative history of Sections 1462, and 1465, as supplied by counsel, makes clear the fact that Congress had no understanding or intent that these sections would reach telephone calls.

■ The final counts of the Indictment charged defendants with violating 47 U.S.C. Sec. 223(a)(1)(A). Again, the legislative history, and judicial interpretations of that statute establish that it was designed to prohibit the practice of *making* abusive telephone calls:

"The purpose of this bill is to make it a Federal offense *to make* certain obscene or harassing telephone calls in interstate or foreign commerce." S.Rep. No. 1334, 89th Cong.2d Sess. 1 (1966) (emphasis added)."

"The bill makes the use of a telephone ... *for the placing* of obscene, abusive or harassing telephone calls (most of which are anonymous) across State boundary lines or within the District of Columbia a Federal crime...." House Report No. 1109, 90th Cong.2d Sess. 2 (1968) [U.S.Code Cong. & Admin.News 1968, p. 1915] (emphasis added)."

The courts have uniformly construed the purpose of Section 223(a) as prohibiting the making of abusive or harassing calls. *United States v. Darsey,* 342 F.Supp. 311 (E.D.Pa.1972); and see, *United States v. Lampley,* 573 F.2d 783, 787 (3rd Cir.1978).

In addition, the F.C.C. itself specifically concluded that dial-it services were not prohibited by Section 223(a):

"... the legislative history (of that section) overwhelmingly supports the conclusion that section (223(a)) was directed only against persons who deliberately *place* obscene ... telephone calls." Memorandum Opinion and Order, F.C.C. 84–76, at p. 9, March 7, 1984. (Emphasis supplied).

\* \* \* \* \* \*

"(T)he purpose of the statute is clear: section 223 (current Sec. 223(a)) was intended to apply to obscene or indecent phone calls that are deliberately made to innocent, unconsenting individuals. The absence of any reference in the legislative history to obscene phone calls between consenting parties leads us to conclude that such messages simply were not within the ambit of section 223's prohibition." *Ibid.* at p. 12.

The F.C.C.'s determination is entitled to substantial deference. It is well established that when an administrative agency construes a statute it is charged with enforcing, that construction is entitled to great weight. *Jensen v. United States,* 662 F.2d 664, 666 (10th Cir.1981).

The Supreme Court recently had occasion to rule that when a statute does not "plainly and unmistakably" cover a defendant's conduct, that statute will not be expanded by court interpretation. In refusing to expand the provisions of 18 U.S.C. Sec. 2314 to cover interstate transportation of "bootleg records," the Court in *Dowling v. United States,* 473 U.S. 207, 105 S.Ct. 3127, 3131–3132, 87 L.Ed.2d 152 (1985) pointed out that federal crimes " 'are solely creatures of statute' ", and that "(a)ccordingly, when assessing the reach of a federal criminal statute, we must pay close heed to language, legislative history, and purpose in order strictly to determine the scope of the conduct the enactment forbids. Due respect for the prerogatives of Congress in defining federal crimes prompts restraint in this area, where we typically find a 'narrow interpretation' appropriate."

In our particular situation, we have clear evidence of Congressional intent because legislative history indicates that in enacting Section 223(b) Congress itself recognized that the former Section 223, now Section 223(a) and other criminal statutes, did *not* cover the dial-it services provided by defendants. H.R. Report No. 356, 98th Cong. 1st Sess., reprinted in 1983 U.S. Code Cong. & Ad. News, 2219, 2235. In determining to regulate dial-it services by enacting Section 223(b), Congress recognized the constitutional interests involved, and provided a statutory defense to prosecution in the case of providers who limited access by minors pursuant to regulations to be provided by the Commission. Congressman Kastenmeier, one of the sponsors of the amendment to Section 223, noted that "we have carefully constructed section 223, as amended, to avoid reducing the adult population to hearing only what is fit for a child." 129 Cong. Rec. E5966 (Dec. 14, 1983). Under the statutes relied upon by the government there is no such balanced approach. Sections 1462 and 1465 of Title 18 U.S.C., and Section 223(a) of Title 47 were never intended to, and do not, apply to defendants' conduct.

We find that the district court's order dismissing the Indictment was based upon a correct construction of the relevant statutes and that order is AFFIRMED.